UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEYON S. WALKER,

    Petitioner,                             Civil No. 04-CV-74264-DT
                                            HONORABLE PAUL D. BORMAN
v.                                        UNITED STATES DISTRICT JUDGE

TOM BELL,

    Respondent,
_____/

**OPINION AND ORDER:**
**1) DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS;**
**2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY; AND**
**3) DENYING PETITIONER LEAVE TO APPEAL IN FORMA PAUPERIS**

Keyon S. Walker ("Petitioner"), presently confined at the Brooks Correctional Facility in Muskegon Heights, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for first-degree home invasion, M.C.L.A. 750.110a(2); M.S.A. 28.305(a)(2); for domestic violence, M.C.L.A. 750.81(2); M.S.A. 28.276(2); and for being a fourth felony habitual offender, M.C.L.A. 769.12; M.S.A. 28.1084. For the reasons stated below, the Court DENIES Petitioner's application for writ of habeas corpus.

### I.  BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in the Oakland

1

County Circuit Court. The Michigan Court of Appeals made the following presumptively-correct factual findings regarding Petitioner's convictions:[1]

> Around 3:55 a.m. on June 3, 2001, several Pontiac police officers were dispatched to the apartment of Demesha Samples at 328 Kent Street, Pontiac, Michigan, pursuant to a 911 call she placed. As police officers were arriving at Samples' apartment, defendant was walking down from the upstairs of the apartment complex towards the parking lot. Officer Charles Janczarek explained that Samples' apartment door had been forced open as the door was "demolished," and torn off the wall.
>
> According to Officer Janczarek, Samples informed him that she got in an argument with defendant, who kept calling, and when she did not answer she heard someone knocking at her door, which became more violent, when she did not answer, to the point it was broken open. Officer Janczarek testified that Samples told him that she locked herself in the bathroom and called 911 because someone had broken into her apartment, and she explained that she heard the door break and knew it was defendant. Officer Janczarek further testified that Samples stated that she heard defendant trying to open the bathroom door with a hanger, and that when he got in he began assaulting her as he slapped and punched her while she was balled up on the floor of the bathroom. Officer Janczarek also testified that Samples indicated that defendant left when she told him the police were on the way. Officer Robert Ludd stated that Samples informed him that her boyfriend had kicked in the door and assaulted her. Officer Ludd further stated that Samples' nightgown was ripped suggesting assault.
>
> Samples made a written statement, which was admitted into evidence, providing that defendant came to her house, knocked down the door of the apartment, broke open the bathroom door, and assaulted her. Samples' 911 tape was also admitted into evidence. Samples acknowledges making the written statement, certain statements to the police officers, and making the 911 call.
>
> At trial, Samples testified that she and defendant were arguing because he was with another female. Samples further testified that she had lost her keys so she forced her apartment door open with her arm, and it was "basically off the hinges." According to Samples, later that night she heard footsteps, so she went to the bathroom and locked herself in knowing it was defendant, and at this time defendant began banging on the door and hollering her name, at which time she called 911. Samples stated that defendant opened the bathroom door with a coat

---

[1]*See Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001).

hanger. Samples acknowledged that defendant grabbed and was smacking at her, and that she was curled up in the fetal position blocking him.

Officer Janczarek testified that Samples informed him that defendant had moved out of her apartment in April 2001, did not have a key, and had no personal items in the apartment. Samples testified that defendant was living with her at the Kent Street apartment until June 3, 2001, and that she told the police he was not living there because she was on assisted living, did not want to lose her apartment, and it would be in violation of her lease to have defendant living there. Samples further testified that she told the police things that were not true because she was angry with defendant and wanted to get back at him for being with another woman. Samples also testified that defendant had clothing and personal hygiene items at the apartment. Officer Chad Chandler searched the apartment for clothing or any other evidence that would indicate that defendant was living in the apartment. Officer Chandler testified that no clothing of defendant's, toiletries, or anything with defendant's name was found in Samples' apartment, which indicated that defendant did not live there. Officer Chandler further testified that, during booking, defendant indicated that he lived at 121 South Boulevard.

*People v. Walker,* 242171, at * 1-2 (Mich.Ct.App. December 18, 2003).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 470 Mich. 886; 682 N.W. 2d 96 (2004). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Petitioner was deprived of his Ams V and XIV rights of due process when his conviction was against the great weight of the evidence.

II. Petitioner was deprived of his Ams V and XIV rights of due process when hearsay evidence was introduced at a crucial point.

III. Petitioner was deprived of his Ams V and XIV rights of due process and his Am. VI right to the effective assistance of counsel when his trial counsel introduced evidence of Defendant's criminal history.

IV. Petitioner was deprived of his Ams V and XIV rights of due process when he was permitted to plead guilty to habitual fourth, when in fact, he was guilty only of habitual third.

V. Petitioner was deprived of his Ams V and XIV rights of due process when

>he was convicted of Home Invasion, First [degree] when the charge was intent to commit a misdemeanor.

## II. STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. ANALYSIS

4

### A. Great-Weight-of-the-Evidence Claim

Petitioner first contends that the jury's verdict went against the great weight of the evidence.

A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). A claim that a verdict went against the great weight of the evidence is not of constitutional dimension for habeas corpus purposes unless the record is so devoid of evidentiary support that a due process issue is raised. *Cukaj,* 305 F. Supp. 2d at 796; *see also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003). The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Dell,* 194 F. Supp. 2d at 648. As long as there is sufficient evidence to convict Petitioner of these crimes, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. *Id.*

To the extent that Petitioner argues that the evidence was insufficient to convict him of first-degree home invasion, his claim would be without merit. A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The scope of review in a federal habeas proceeding of the sufficiency of evidence in a state criminal prosecution "is extremely limited and a habeas court must presume that the trier of fact resolved

all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry v. Bock,* 208 F. Supp. 2d 780, 794 (E.D. Mich. 2002). A conviction may rest on circumstantial evidence as well as inferences based upon the evidence, and a federal habeas court reviewing the sufficiency of evidence to support a conviction need not rule out all possible interpretations of the circumstantial evidence. *Dell,* 194 F. Supp. 2d at 647.

  M.C.L.A. 750.110a(2), Michigan's first-degree home invasion statute, indicates that a person is guilty of first-degree home invasion if he or she breaks and enters a dwelling "with the intent to commit a felony, larceny, or assault." Michigan's first-degree home invasion statute includes all of the elements of the burglary of a dwelling, but also requires that the defendant be armed with a dangerous weapon and/or that the dwelling be occupied. *See Johnson v. Warren,* 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004)(citing *United States v. Garcia-Serrano,* 107 Fed. Appx. 495, 496-97 (6th Cir. 2004)). The term "without permission" is defined by Michigan law as "without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling." M.C.L.A. 750.110a(1)(c). To amount to a breaking under Michigan law, "[s]ome force, no matter how slight, must be used to gain entry." *People v. Kedo*, 108 Mich. App 310, 318; 310 N.W. 2d 224 (1981). The intent element may reasonably be inferred from the nature, time, and place of a defendant's acts before and during the breaking and entering of the dwelling. *See People v. Uhl*, 169 Mich. App 217, 220; 425 N.W. 2d 519 (1988).

  As the Michigan Court of Appeals indicated in its opinion, *see People v. Walker,* Slip. Op. at * 6-7, there was sufficient evidence to establish that Petitioner did not have permission to be at Samples' home and that he broke into this home with the intention to assault Samples.

6

Officer Janczarek testified that the door to Samples' apartment had been "demolished" and torn off the wall. Officers Janczarek and Ludd both testified, pursuant to several hearsay exceptions, that Samples told them that Petitioner had broken or kicked in her door and had assaulted her. Officer Ludd noticed that Samples' nightgown was ripped, which suggested that she had been assaulted. Officer Janczarek further testified that Samples informed him that Petitioner had moved out of her apartment in April of 2001, no longer had a key, and had no personal possessions in her apartment. Although Samples testified at trial that Petitioner was living at the apartment at the time of the assault, Officer Chandler testified that he searched the apartment on the night in question and found none of Petitioner's clothing or other possessions inside of Samples' apartment. Officer Chandler further testified that, during booking, Petitioner informed Chandler that he was living at 121 South Boulevard, which was not the victim's address. Finally, although Samples claimed at trial that she had forced her door open after losing her keys, she also testified at trial that on the night of the break-in and assault, she locked herself into the bathroom after she heard Petitioner's footsteps. Samples further testified that she dialed 911 after Petitioner began banging on the bathroom door and calling her name. Samples testified that Petitioner opened the bathroom door with a coat hanger and began hitting her.

In the present case, there was sufficient direct and circumstantial evidence for a rational trier of fact to determine that Petitioner did not live at Samples' apartment, did not have permission to be there, and broke in with the intent to assault Samples. The mere fact that some of the evidence that was used to convict Petitioner was admitted pursuant to an exception to the hearsay rule (*See* Claim II, *infra*) would not render the evidence insufficient to convict

7

Petitioner.  "[T]here is no rule that facts proven under exceptions to the hearsay rule, though received in evidence, must be denied all evidentiary value." *Kay v. United States,* 255 F. 2d 476, 481 (4th Cir. 1958).  Petitioner is not entitled to habeas relief on this claim.

### B. Hearsay-Evidence Claim

Petitioner next claims that the trial court erred in permitting Officers Janczarek and Ludd to testify to out-of-court statements that Samples made to them.

The Michigan Court of Appeals ruled that Samples' out-of-court statements to Officer Janczarek and Ludd were admissible pursuant to the excited utterance exception to the hearsay rule contained in M.R.E. 803(2).  The Michigan Court of Appeals noted that only three minutes lapsed between Officer Janczarek's arrival at the crime scene and when he spoke with Samples.  Officer Janczarek described Samples as being "excited, she was upset.  I could tell that she had been crying," and he described her voice as "cracking."  Officer Janczarek further testified that Samples appeared bothered and requested a cigarette.

Officer Ludd testified that he spoke with Samples about two and a half minutes after his arrival.  Officer Ludd described Samples as being "in an excited state," "she was very nervous," and "her face was red."  Officer Janczarek further testified that Samples was still upset and agitated when she made a written statement to the police some eighteen to twenty-three minutes after Officer Janczarek arrived at Samples' apartment.  The Michigan Court of Appeals concluded that the trial court properly admitted Samples' statements to Officers Janczarek and Ludd under the excited utterance exception because the statements arose from a startling occasion and the officers testified that Samples was excited and upset when they spoke to her.  Moreover, because Samples made these statements just as the police were arriving and Petitioner was

leaving the location, it could reasonably be inferred that the home invasion and the assault were the cause of Samples' stress and that she was still under the influence of the stress when she made the statements. *People v. Walker,* Slip. Op. at * 5-6.

State law governs what constitutes hearsay evidence in a state-court trial. *Gochicoa v. Johnson*, 118 F. 3d 440, 445 (5th Cir. 1997); *Diaz v. Curtis,* 2000 WL 1769571, * 7 (E.D. Mich. October 31, 2000). Moreover, a federal habeas court is bound by a state appellate court's ruling that certain testimony is not hearsay. *See Maynard v. Lockhart,* 981 F. 2d 981, 986 (8th Cir. 1992). In this case, the Michigan Court of Appeals determined that the victim's statements to Officers Janczarek and Ludd were admissible under the excited utterance exception to the hearsay rule. Petitioner's claim that the trial court improperly admitted the victim's statements to Officers Janczarek and Ludd under the excited utterance exception to the hearsay rule presents a state evidentiary law issue that is not cognizable on federal habeas review. *See Weber v. Newland,* 16 Fed. Appx. 692, 693 (9th Cir. 2001); *cf. Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002)(holding that the Petitioner's claim that state court erred in admitting hearsay testimony was not cognizable in federal habeas review where the claim alleged a violation of state evidentiary law, not a violation of federal constitutional rights).

Moreover, the evidence at trial suggests that it was proper to admit the victim's statements to Officers Janczarek and Ludd pursuant to the excited utterance exception to the hearsay rule and that the admission of these statements did not violate Petitioner's right of confrontation under the Sixth Amendment to the United States Constitution. F.R.E. 803(2) and M.R.E. 803(2) recognize an excited utterance as an exception to the hearsay rule. The excited utterance exception or "spontaneous declaration" exception is a firmly rooted exception to the hearsay rule. *White v. Illinois,* 502 U.S. 346, 355, n. 8 (1992); *Webb v. Lane*, 922 F. 2d 390, 393 (7th Cir. 1991); *People of the Territory of Guam v. Ignacio*, 10 F. 3d 608, 615 (9th Cir. 1993). Excited utterances contain inherent guarantees of truthfulness that render adversarial testing unnecessary and thus satisfy the requirements of the Confrontation Clause. *See United States v. Schreane,* 331 F. 3d 548, 563 (6th Cir. 2003(internal citations omitted). Three

elements are necessary for an out-of-court statement to qualify as an excited utterance: 1) "there must be an event startling enough to cause nervous excitement"; 2) "the statement must be made before there is time to contrive or misrepresent"; and 3) "the statement must be made while the declarant is under the stress of the excitement." *Haggins v. Warden*, 715 F. 2d 1050, 1057 (6th Cir. 1983).

One of the "most relevant factors" in determining whether a statement should be admitted under the excited utterance exception is the length of time between the event being described and when the statement is made. *Haggins*, 715 F. 2d at 1057. However, the "ultimate question" in determining whether a statement qualifies as an excited utterance is whether the statement was the result of reflexive thought or whether it was a spontaneous reaction to an exciting event. *Id.* at 1058 (internal citations omitted). A court must take into account other factors that would affect spontaneity: "[p]hysical factors, such as shock, unconsciousness or pain, may prolong the period in which the risk of fabrication is reduced to an acceptable minimum." *Id.* (quoting 4 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 803 (2)[01] at pp. 803-805 (1981)).

In the present case, the record reasonably supports the Michigan Court of Appeals' determination that Samples' statements to Officers Janczarek and Ludd fell within the excited utterance exception to the hearsay rule such that Petitioner is not entitled to federal habeas relief based upon the Confrontation Clause. Petitioner's break-in and assault could reasonably be viewed as a startling event, the victim's statements were made shortly after this startling event, and the victim's statements could reasonably be seen as being related to the stress of Petitioner's intrusion. *See Woodward v. Williams,* 263 F. 3d 1135, 1140-41 (10th Cir. 2001). Petitioner is not entitled to habeas relief on this claim.

### C. Ineffective-Assistance-of-Trial-Counsel Claim

Petitioner next claims that his trial counsel was ineffective for permitting Samples to testify that Petitioner had previously been incarcerated. On direct examination, defense counsel asked Samples whether Petitioner moved to the 328 Kent Street address with her. In response, Samples indicated that Petitioner was incarcerated at the time she moved. Counsel then asked Samples where Petitioner lived after he was released from incarceration. Samples testified that

10

Petitioner was initially paroled to his mother's house, and subsequently moved in with her (Samples).

In rejecting this claim, the Michigan Court of Appeals initially noted that defense counsel did not elicit the response from Samples, finding her answer to counsel's question to be non-responsive to his question. The Michigan Court of Appeals further noted that it could have been trial strategy to introduce evidence that Petitioner was incarcerated. The Michigan Court of Appeals indicated that some of the testimony suggested that Samples lived in subsidized housing and was not allowed to have anyone that may have been involved in criminal activity residing in her home. The Michigan Court of Appeals concluded that questions about Petitioner's previous incarceration could have been an attempt by counsel to convey to the jury that Petitioner lived at Samples' house, but that Samples had to keep it private because of Petitioner' prior criminal activity. *People v. Walker,* Slip. Op. at * 8.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.*

11

Petitioner's claim that trial counsel was ineffective for eliciting testimony from Samples regarding Petitioner's prior incarceration fails for several reasons. Samples' answer to counsel's question was volunteered and non-responsive. *See Holladay v. Haley,* 209 F. 3d 1243, 1253 (11th Cir. 2000). Samples only briefly alluded to Petitioner's prior incarceration, and did not elaborate as to why or where Petitioner had been incarcerated. Counsel's decision to clarify that Petitioner had briefly been incarcerated for an innocuous reason, rather than moving to strike Samples' testimony regarding Petitioner's prior incarceration, was not deficient performance. *See Chavez v. Hickman,* 16 Fed. Appx. 760, 762 (9th Cir. 2001). Moreover, because the jury did not receive any additional information about Petitioner's prior incarceration, Petitioner has failed to show that Samples' brief remark prejudiced him. *See Bonin v. Vasquez,* 807 F. Supp. 589, 601 (C.D. Cal. 1992). Indeed, because of the strength of the evidence against Petitioner, there is no reasonable probability that, but for Samples' reference to Petitioner's prior incarceration, the result of the proceeding would have been different. *See Baranow v. United States*, 703 F. Supp. 134, 137 (D. Me. 1988). Petitioner is not entitled to habeas relief on this claim.

### D.  Habitual-Offender Claim

Petitioner next contends that the trial court erred in accepting his guilty plea to being a fourth-felony habitual offender because he was only guilty of being a third-felony habitual offender. Petitioner claims that several prior convictions underlying his fourth-felony habitual offender charge arose from the same incident such that they may only be counted as a single conviction for purposes of the habitual offender statute.

Petitioner is not entitled to habeas relief on this claim for several reasons. Petitioner has

12

never provided any evidence, either to the state courts or to this Court, that the prior convictions underlying his habitual offender charge arose from a single transaction. Conclusory allegations in a habeas petition, without evidentiary support, do not provide a basis for habeas relief. *Payne v. Smith,* 207 F. Supp. 2d 627, 650 (E.D. Mich. 2002); *see Collier v. United States,* 92 F. Supp. 2d 99, 106 (N.D.N.Y. 2000)(rejecting claim that counsel was ineffective for failing to investigate the defendant's prior convictions in order to challenge defendant's sentence as a career offender, absent any evidence, other than the defendant's conclusory statements, that his prior convictions should have been given youthful offender status).

Although Petitioner pleaded guilty to being a fourth-felony habitual offender, the trial court only sentenced Petitioner as a third-felony habitual offender. Petitioner's minimum sentence of eight years was within the sentencing guidelines range for a Class B offense like first-degree home invasion with Petitioner's guidelines scoring even without any habitual offender enhancement. *People v. Walker,* Slip. Op. at 9, n. 5 (citing M.C.L.A. 777.16f; M.S.A. 777.63). In addition, if a defendant is convicted of being a third-felony habitual offender, he or she can receive a maximum sentence that is double the maximum sentence of the underlying felony. M.C.L.A. 769.11; M.S.A. 28.1083. Petitioner's maximum sentence of forty years was double the maximum penalty of twenty years for the underlying first-degree home invasion conviction. Because Petitioner's sentence of eight to forty years was within the range of permissible sentences for being a third-felony habitual offender, any error in permitting Petitioner to plead guilty to being a fourth-felony habitual offender, rather than a third-felony habitual offender, did not violate Petitioner's due-process rights. *See Walton v. Attorney General Of State of Ala.,* 986 F. 2d 472, 475 (11th Cir. 1993)(even if habeas Petitioner

13

challenging the use of one of three prior convictions for purposes of a sentence enhancement under the Alabama Habitual Felony Offender Act had been sentenced under the Act for two prior convictions rather than three, the range of permissible sentences would have been 10 to 99 years and, consequently, his 25- year sentence was not fundamentally unfair). Petitioner is not entitled to habeas relief on this claim.

### E. Improper-Plea claim

Petitioner contends that it was improper to charge him with the crime of first-degree home invasion where the underlying crime that he was accused of intending to commit was only a misdemeanor assault.

The Michigan Court of Appeals rejected this claim because the clear language of the first-degree home invasion statute requires that a defendant intend to commit a felony or an assault at the time of the breaking and entering. The Michigan Court of Appeals further noted that the underlying assault need not be a felony, and that a contrary interpretation "would render use of the assault language [in the statute] surplusage." *People v. Walker,* Slip. Op. at * 10.

In *People v. Sands,* 261 Mich. App. 158, 163; 680 N.W. 2d 500 (2004); *lv. den.* 471 Mich. 873; 685 N.W. 2d 671 (2004), the Michigan Court of Appeals ruled that both felony and misdemeanor assaults could be used as underlying crimes to charge a person with first-degree home invasion. Significantly, the Michigan Court of Appeals noted: "[F]urther, because felonies are specifically listed as underlying crimes for first-degree home invasion, it would be redundant to list assault and larceny separately if subsection 110a(2) was referring to only felony assaults and larcenies." *Id.*

14

State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975). State law determines the parameters of a state criminal offense and its elements, and a federal court may not reinterpret state law on federal habeas review. *Tillman v. Cook*, 215 F. 3d 1116, 1131-32 (10th Cir. 2000)(internal citations omitted). A federal habeas court must, therefore, defer to a state appellate court's construction of the elements of state crimes. *See Coe v. Bell*, 161 F. 3d 320, 347 (6th Cir. 1998). In this case, the Michigan Court of Appeals has determined that a misdemeanor assault can serve as the underlying charge for a first-degree home invasion charge. This Court must defer to the Michigan Court of Appeals' construction of the elements of the first-degree home invasion statute and, thus, cannot grant habeas relief on this basis.

## IV. CONCLUSION

For the preceding reasons, the Court DENIES Petitioner's application for a writ of habeas corpus. A petitioner may appeal a district court's denial of his petition for a writ of habeas corpus only upon the issuance of a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b). A petitioner must make "a substantial showing of the denial of a constitutional right" for a certificate of appealability to issue. 28 U.S.C. § 2253(c)(2). A petitioner satisfies this substantial-showing threshold upon demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court must either issue a certificate of appealability indicating which issues satisfy the requisite showing or provide the reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R.

App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

     The Court concludes that reasonable jurists would not find the Court's assessment of any of Petitioner's claims to be debatable or wrong. *See Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court, therefore, DENIES Petitioner a certificate of appealability as to all of his claims. The Court, likewise, DENIES Petitioner leave to appeal *in forma pauperis* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

SO ORDERED.

                                               s/Paul D. Borman  
                                               PAUL D. BORMAN  
                                               UNITED STATES DISTRICT JUDGE

Dated: August 30, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 30, 2005.

                                               s/Jonie Parker  
                                               Case Manager